MARLON RICHARD CHATTMAN *v.* STATE OF INDIANA.

[No. 3-174A17. Filed June 25, 1974.]

*Dale J. Myers,* Deputy Public Defender, of Fort Wayne, for appellant.

*Theodore L. Sendak,* Attorney General, *Robert F. Colker,* Assistant Attorney General, for appellee.

HOFFMAN, C.J.—Defendant-appellant Marlon Richard Chattman was charged by affidavit in two counts with 1) robbery and 2) rape. To the charges contained in the affidavit, appellant pleaded not guilty. Following trial to the court, appellant was found guilty as charged in both counts of the affidavit and ordered committed to the Indiana Department of Corrections for concurrent periods of not less than ten years nor more than twenty-five years for robbery, and not less than two nor more than twenty-one years for rape. Thereafter, appellant's motion to correct errors was denied and this appeal was perfected.

The sole issue presented for review is whether the evidence is sufficient to place the defendant at the scene of the crime at the time testified to by the complaining witness. More particularly, the question is whether the fact that the witness'

assailant was wearing a ski mask rendered identification beyond a reasonable doubt impossible.

An examination of the evidence most favorable to the State discloses that on the morning of January 10, 1973, the complaining witness was working alone at the Main Dry Cleaners located in Fort Wayne, Indiana. At approximately 9:20 A.M. a man, later identified as defendant-appellant Marlon Chattman, entered the store. The witness testified that Chattman was wearing a brown ski mask which revealed only his eyes and mouth. Appellant stated that he had left a jacket and inquired if it was available. When the complaining witness found that the man did not have a claim check, she asked for his name and address. In response, appellant gave the name of "Marlin Chapman" which she wrote on a piece of paper as she heard it. He also gave her an address of "925 East Wayne", which matched the address given by appellant under direct examination. The witness further testified that after asking Chattman to return at a later time, he stated, "I'll look myself." Appellant then proceeded to walk around a counter into the back room of the store. After hesitating for a moment, the witness followed and asked Chattman if she could help. At that point, appellant "seemed to lose his temper" and removed a brown paper sack from his packet. Shortly thereafter, appellant placed his hand into his jacket and pressed what the witness felt to be a weapon in her side. He stated, "You get up there and empty that cash register." She complied by placing money from the cash register into the paper sack. She was subsequently instructed to go into an adjoining restroom and remove all her clothing. Appellant soon followed and again instructed her "to take your clothes off and get down on the floor and spread your legs apart." The complaining witness testified that "he had his hand in his pocket as if he would kill you any minute." She further testified that appellant then raped her and afterward, fled from the store removing articles of clothing from a rack as he exited.

The testimony of Michael T. Merideth, an acquaintance of Chattman, further revealed that at approximately 11:00 A.M. on the morning in question, Chattman entered Merideth's house carrying various articles of clothing and a brown paper sack. This witness, on direct examination by the State, testified that he asked Chattman if he had robbed "the cleaners", and that Chattman eventually replied that he had.

Although defendant contends that the complaining witness was incapable of making a positive identification of her assailant due to the fact that he was wearing a ski mask, she testified to a conclusive identification. Her testimony pertaining to such identification of the defendant is as follows:

"Q. Now, Mrs. *, in your testimony I recall your indicating that this person who robbed and raped you was approximately in his teens, late teens, as a matter of age; that he was approximately 5' 10" in height, his weight in the neighborhood of or about 145 pounds.
"A. Right.

"Q. And that he was a black man, brown-skinned.
"A. Right.

"Q. That he gave you the name of or at least the name that you wrote down of 'Marlin Chapman?'
"A. Right.

"Q. Was there anything else about him that would help you identify this person?
"A. I noticed his teeth were overlapping.

"Q. What about his teeth?
"A. Well, as a child grows, his teeth sometimes overlap and they need care, and I thought that maybe that's what it was.

"Q. Now, can you describe his teeth for us? Were they white?
"A. White teeth but they had grown in—these two (gestures) were overlapping.

"Q. All right. Were they stained at all that you might recall?
"A. No.

"Q. Now, considering these items—age, height, weight, race, teeth, would you know this person if you saw him again?

"A. I'm quite sure I would.

"Q. Notwithstanding the fact he was wearing a mask, you understand—

"A. Right.

"Q. —I'm asking you whether you could identify this person if you saw him again?

"A. I'm sure I could.

"Q. Had you seen him prior to the time that he came in, to the best of your recollection?

"A. No.

"Q. Is he present in the Court today?

"A. Yes, he's here.

"Q. Would you point him out, please?

"A. The young man sitting there (pointing to the defendant).

"Q. This is the young man that is sitting at the counsel table next to Attorney Myers?

"A. Right.

"Q. He's wearing a sleeveless pullover shirt, dark blue or black with red and white striping?

"A. Right.

"Q. How confident are you that this is one and the same person who robbed and raped you on the 10th of January of this year?

"A. Well, in the cleaners you meet a lot of people and you, there are things about them that you just remember.

"Q. And it's because of the things that you remember about your attacker —

"A. That's right.

"Q. — that you can say positively that the defendant is one and the same person?

"A. Yes."

The weight given a positive identification of the defendant by a witness is a matter which falls within the exclusive province of the trier of fact. *Hash* v. *State* (1973), 259 Ind. 683, 291 N.E.2d 367; *Alexander* v. *State* (1973), 158 Ind. App. 698, 304 N.E.2d 329. In the present case the court, as trier of fact, could give the testimony of the complaining witness whatever weight it deemed appropriate, taking into consideration the fact that her attacker kept his face covered.

The certainty of identification is the only element of the two charges in dispute. The court felt the witness was capable of rendering a positive identification and, therefore, afforded her testimony the corresponding weight. Absent any showing by defendant of reversible or prejudicial error, the evidence most favorable to the State supports the court's determination of defendant's guilt beyond a reasonable doubt on both counts of the affidavit.

The judgment of conviction entered by the trial court is, therefore, affirmed.

Affirmed.

Garrard and Staton, JJ., concur.

NOTE.—Reported at 312 N.E.2d 529.